The Full Commission has reviewed the prior Opinion and Award based on the record of proceedings before the deputy commission and the briefs and arguments of counsel for the parties. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Opinion and Award of the deputy commissioner and determines that the evidence fails to establish that plaintiff sustained an occupational disease during her employment with defendant employer.
***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as
STIPULATIONS
1. On the dates involved, the parties were bound by and subject to the North Carolina Workers Compensation Act.
2. On said date(s) the employer-employee relationship existed between the parties.
3. As of said date(s), ITT Hartford provided the coverage to the employer as provided under said Act.
4. On said date plaintiff was earning an average weekly wage of $156.59.
5. The issues to be determined in this case are:
a. Did plaintiff sustain the occupational disease of carpal tunnel syndrome arising out of and in the course of her employment with the defendant-employer; and,
b. If so, are the disabilities of which plaintiff complains caused by said occupational disease; and,
c. If so, to what compensation, if any, is plaintiff entitled under the Act.
6. The parties further stipulate as follows:
a. Plaintiff began her employment with defendant employer April 14, 1986.
b. Plaintiff last performed her work duties for defendant employer and terminated her said employment May 10, 1996.
c. Plaintiff began other employment with another employer July 28, 1997.
d. Plaintiff is asking for temporary total disability compensation benefits from May 10, 1996 to July 28, 1997 and for medical benefits under the Act.
e. Plaintiff had surgery to her right hand May 16, 1996.
After the hearing before the deputy commissioner on February 24, 1998, the parties entered the following into the record:
1. Deposition of Tullio L. Coccia, M.D., dated 3 March 1998.
2. Deposition of Alan C. Gorrod dated 5 March 1998.
3. Deposition of Todd Wesley Shapley-Quinn, M.D., dated 4 March 1998.
***********
Based upon the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. On 10 May 1996, the last date of her employment with defendant employer, plaintiff was forty-five years of age. She had a high school education and was employed by defendant employer for approximately 10 years. She was employed as a cutter, a job she held during most of her employment with defendant employer. Defendant employer produced athletic goods, including t-shirts, jock straps, and knee pads.
2. There were several components to plaintiffs cutter position: running the ace machine for the tube material, running another ace machine for cutting pouches for athletic supporters, laying out eighteen inch material for the covers, laying out hard cup, and pulling the trolleys in place for the sewers or cutters. Plaintiff used an ace machine, or cutter, to cut the tube of fabric off the roll and then used a pattern to cut the material. She used a different ace cutter machine to cut pouch material for the cup for the athletic supporter. She would sometimes cut about 750 dozen in one day, with machine assistance. In performing one component of her job, she had to reach overhead to throw material over a rod and then pull the fabric onto a table before cutting the fabric with an electric knife. She also stuffed knee pads with foam rubber. On most days, she would rotate between the various components of the job, but, on some occasions, she would perform one component for a full shift. The job was not a "production job, but plaintiff set a high standard and was a productive worker. Other employees who were in production jobs relied on receiving items from plaintiff. In performing her tasks, plaintiff would often grasp material with her fingers and rotate her hands at the wrist when handling and turning material.
3. Plaintiff worked for defendant employer for nine years in the same or similar position before developing symptoms of carpal tunnel syndrome and shoulder impingement syndrome (CTS/SIS). In March 1995, plaintiff began to have symptoms of carpal tunnel syndrome in both arms, more seriously in her right arm and wrist, and pain in her right shoulder with motion. CTS and SIS are often associated with "repetitive motion jobs, or jobs which involve significant repetition, forceful exertion, awkward position, unsupported posture, contact stress, vibration, and adverse temperature, or several of these factors in sufficient degree.
4. Plaintiff initially worked while receiving conservative treatment in the form of splints, braces, anti-inflammatory medications, and other conservative treatment. Plaintiff did not lose any appreciable time from work until 15 March 1996, one year following the appearance of her symptoms.
5. Plaintiff was first treated by Todd Shapley-Quinn, M.D., her family physician. Dr. Shapley-Quinn had been treating plaintiff for a number of years, including treating plaintiff for her Type II Diabetes. Plaintiff had been insulin dependent for a few years before her carpal tunnel symptoms developed. When plaintiffs CTS worsened, Dr. Shapley-Quinn referred her to Tullio Coccia, M.D., an orthopedic surgeon in Danville, Virginia. On 16 May 1996, Dr. Coccia performed a right arm carpal tunnel release surgery on plaintiff. Plaintiff was treated with therapy, post-surgery, and also received therapy for her shoulder.
6. After 10 May 1996, plaintiff was not able to obtain other employment suitable to her restrictions until she accepted employment at the North Carolina Visitors Center, where she performed sedentary work. At the time of the hearing before the deputy commissioner, she was earning a higher rate of pay than she had received during her tenure with defendant employer.
7. Diabetics are prone to developing CTS/SIS as a result of metabolic conditions of the disease. The tendency to develop CTS/SIS exists irrespective of whether the diabetic engages in repetitive motion tasks. These syndromes may develop with no repetitive motion exposure, but diabetics are more susceptible to developing these syndromes if repetitive motion is involved.
8. Alan C. Gorrod testified as defendants expert ergonomic evaluation specialist. He found risk factors of repetition and forceful exertion to be present on two components of plaintiffs job, but he found these risk factors to be low. Although Mr. Gorrod did not take into account plaintiffs unusual level of productivity and he appeared to place too much weight upon her rotation among similar tasks, the Commission finds that the evidence fails to establish that plaintiffs job with defendant employer placed her at an increased risk of developing CTS and SIS as compared to the general run of occupations. Because of plaintiffs diabetes and the attendant increased susceptibility to these disorders, plaintiffs job with defendant employer was a contributing factor in plaintiffs development of these syndromes. However, there is insufficient proof that the tasks involved in plaintiffs job increased her risk of developing CTS/SIS as compared to the general run of occupations.
***********
The Full Commission concludes as a matter of law the following:
 CONCLUSIONS OF LAW
1. Plaintiffs impingement disorders of CTS and SIS did not develop due to causes and conditions which are characteristic of and peculiar to her employment with defendant employer, but excluding ordinary diseases of life to which the general public is equally exposed outside of such employment. Plaintiffs job with defendant employer did not place her at an increased risk of developing CTS and SIS as compared to the general run of occupations. G.S.97-53(13); Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983).
2. Plaintiff did not sustain an occupational disease under the Act. G.S. 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiffs claim is DENIED.
2. Each party shall bear its own costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER